IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STATE OF OHIO, ex rel. | : | CIVIL ACTION 2:06-CV-553 |
| MICHAEL DeWINE | : | |
| OHIO ATTORNEY GENERAL | : | MAGISTRATE JUDGE NORAH |
| | : | McCANN KING |
| Plaintiff. | : | |
| | : | |
| v. | : | |
| | : | |
| FRANKLIN STEEL COMPANY, et al. | : | |
| | : | |
| Defendants. | : | |

## CONSENT ORDER AND FINAL JUDGMENT ENTRY

Plaintiff, State of Ohio, by and through Ohio Attorney General Michael DeWine, at the

written request of the Director of the Ohio Environmental Protection Agency ("Ohio EPA"), has

filed the Complaint in this action against Defendants, Franklin Steel Company, aka Franklin

Steel Company, Inc. ("Franklin Steel"), the Estate of Sidney I. Blatt and Laura B. Paul, as

Co-Executor of the Estate, seeking reimbursement of certain costs expended pursuant to the

Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended,

42 U.S.C. § 9601, et seq. ("CERCLA") and enforcement of Ohio's hazardous waste and water

pollution laws found in Chapters 3734 and 6111 of the Ohio Revised Code ("R.C.") and rules

adopted thereunder. Defendant Franklin Steel, has consented to the entry of this Consent Order.

THEREFORE, without trial or admission of any issue of law or of fact, and upon the

consent of the undersigned parties, it is hereby ORDERED, ADJUDGED and DECREED as

follows:

**TABLE OF CONTENTS**

I.       STATEMENT OF PURPOSE............................................................4
II.      DEFINITIONS.........................................................................4
III.     JURISDICTION AND VENUE.......................................................7
IV.      PARTIES BOUND....................................................................8
V.       CALCULATION OF TIME...........................................................8
VI.      SATISFACTION OF LAWSUIT; NO ADMISSION.............................8
VII.     REMEDIAL ACTION AND OTHER INJUNCTIVE RELIEF....................9
VIII.    IMPLEMENTATION OF THE REMEDY............................................9
IX.      CIVIL PENALTY....................................................................10
X.       ADDITIONAL WORK...............................................................11
XI.      ENVIRONMENTAL COVENANT..................................................12
XII.     DESIGNATION OF SITE COORDINATORS.....................................13
XIII.    SAMPLING AND DATA AVAILABILITY.........................................15
XIV.     SITE ACCESS.......................................................................15
XV.      PROGRESS REPORTS AND NOTICE............................................17
XVI.     REVIEW OF SUBMITTALS.......................................................18
XVII.    DISPUTE RESOLUTION..........................................................20
XVIII.   CORPORATE TRUST AGREEMENT FOR FUNDS TO IMPLEMENT THE
         REMEDY AND FINANCIAL ASSURANCE FOR OPERATION AND
         MAINTENANCE....................................................................22
XIX.     ACCESS TO INFORMATION.....................................................25
XX.      INDEMNITY........................................................................26
XXI.     RESERVATION OF RIGHTS......................................................27
XXII.    OTHER CLAIMS....................................................................28
XXIII.   PAYMENTS AND REIMBURSEMENT OF COSTS.............................29
XXIV.    OHIO ATTORNEY GENERAL RESPONSE COSTS............................31
XXV.     TERMINATION.....................................................................32
XXVI.    MODIFICATION....................................................................32
XXVII.   MAILING AND DELIVERY OF DOCUMENTS..................................32
XXVIII.  COMPLIANCE WITH APPLICABLE LAWS, PERMITS AND
         APPROVALS........................................................................33
XXIX.    APPENDICES AND DOCUMENTS..............................................34
XXX.     COURT COSTS.....................................................................34
XXXI.    STIPULATED PENALTIES........................................................34
XXXII.   POTENTIAL FORCE MAJEURE..................................................35
XXXIII.  RETENTION OF JURISDICTION.................................................36
XXXIV.   ENTRY OF CONSENT ORDER AND JUDGMENT BY CLERK..............36
XXXV.    AUTHORITY TO ENTER INTO THE CONSENT ORDER.....................36
XXXVI.   EFFECTIVE DATE.................................................................37

## APPENDICES

A.    DECISION DOCUMENT

B.    FACILITY MAP

C.    RD/RA STATEMENT OF WORK

D.    RD/RA GUIDANCE LIST

E.    ENVIRONMENTAL COVENANT

F.    FRANKLIN STEEL CORPORATE TRUST AGREEMENT

## I. STATEMENT OF PURPOSE

1.     In entering into this Consent Order, the mutual objectives of the State of Ohio and the Defendant include (1) implementation and completion of the selected remedy set forth in the Decision Document; and (2) the payment of past and future Response Costs.

## II. DEFINITIONS

2.     As used in this Consent Order:

A.     "Consent Order" means this Consent Order and Final Judgment Entry and all appendices hereto.

B.      "Decision Document" means the document issued by the Director of Ohio EPA on June 28, 2010, after the public notice and comment period for the Preferred Plan giving the Director's selected remedy for the Site and reasons for its selection.

C.     "Defendant" means means Franklin Steel Company, aka Franklin Steel Company, Inc.

D.     "Director" means Ohio's Director of Environmental Protection.

E.      "Effective Date" means the date the clerk of the U.S. District Court for the Southern District of Ohio, Eastern Division, enters this Consent Order.

F.      "Facility" means the three properties, 18.807 acre property, parcel I.D. 025-011447 owned by CQCB, Inc. and the10.0 acre property, parcel I.D. 025-007046 and 7.076 acre property, parcel I.D. 025-006924 owned by

4

Franklin Steel Company, located at or about 1385 Blatt Boulevard,

Blacklick, Franklin County, Ohio and depicted on Appendix B.

G.    "National Contingency Plan" or "NCP" means the National Oil and

Hazardous Substances Pollution Contingency Plan, referred to in

CERCLA as the National Contingency Plan, and codified at 40 CFR Part

300.

H.    "Ohio Attorney General Response Costs" means the enforcement costs of

the Ohio Attorney General's Office in the amount of Two Thousand Five

Hundred dollars ($2,500) expended after December 31, 2007 through the

Effective Date.

I.    "Ohio EPA" means the Ohio Environmental Protection Agency.

J.    "Ohio EPA and U.S. EPA Guidance Documents" and "Applicable

Guidance Documents" mean those documents identified in the appendices

to this Consent Order.

K.    "Parties" means collectively the Plaintiff and Defendant.

L.    "Plaintiff" or "State" mean the Ohio EPA by and through the Ohio

Attorney General.

M.    "Remedial Design" means the detailed engineering plans, specifications

and construction drawings, which are in compliance with the NCP and

sufficient to implement the selected Remedial Action.

N.    "Remedial Action" means any action, or part thereof, selected by Ohio

5

EPA that abates or reduces the threat posed by a placement or disposal or threatened disposal of hazardous substances to prevent present or future harm to the public health or welfare or to the environment, including operation and maintenance of the Remedial Action, and is consistent with the applicable local, state and federal laws and regulations, the NCP, and this Order.

O. "RD/RA" means the Remedial Design and Remedial Action including operation and maintenance of the Site to be performed under this Consent Order.

P. "RD/RA Statement of Work" or "RD/RA SOW" means the statement of work for the implementation of the RD/RA as set forth in Appendix C of this Consent Order.

Q. "RD/RA Work Plan" means the documents detailing the requirements necessary to implement the RD/RA, as more fully described in the appendices to this Consent Order.

R. "Response Costs" means all direct and indirect costs, not inconsistent with the NCP, incurred by Ohio EPA and related to the investigation and remediation of the Site including, but not limited to, payroll costs, contractor costs, travel costs, direct costs, overhead costs, administrative costs, legal and enforcement related costs, oversight costs, laboratory costs, the costs of reviewing and developing plans, reports, and other items

6

pursuant to this Consent Order, verifying the Work, or otherwise implementing or enforcing this Consent Order. These Response Costs include Ohio EPA legal and enforcement costs incurred in calendar year 2008 in the amount of Nine Thousand, Three Hundred Twenty-Two dollars and Sixty-Nine cents ($9,322.69).

S.    "Site" means the Facility and any area beyond the Facility where Waste Material has migrated or threatens to migrate, including, but not limited to, Unzinger Ditch, a tributary of Blacklick Creek.

T.    "Waste Material" means (1) any "hazardous waste" as defined by R.C. 3734.01(J) or Ohio Adm. Code 3745-50-10(A) or 3745-51-03; (2) any "hazardous waste constituent" as that term is defined in Ohio Adm. Code 3745-50-10(A) and listed in the appendix to Ohio Adm. Code 3745-51-11; (3) any "solid waste" under R.C. 3734.01(E); (4) any "industrial waste" under R.C. 6111.01(C); or any "other wastes" under R.C. 6111.01(D).

U.    "Work" means all activities Defendant is required to perform under this Consent Order.

### III.  JURISDICTION AND VENUE

3.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (Federal Question) and 42 U.S.C. § 9613 (b) (CERCLA). This Court has jurisdiction over the claims brought under R.C. Chapters 3734 and 6111 and the rules adopted thereunder, and the common law, pursuant to 28 U.S.C. § 1367 (Supplemental Jurisdiction).

This Court has jurisdiction over the parties.  Venue is proper in this Court.  The Complaint states a claim upon which relief can be granted.

## IV.  **PARTIES BOUND**

4.      The provisions of this Consent Order shall apply to and be binding upon the State, and Defendant, and Defendant's successors in interest and assigns, and others to the extent provided by Civil Rule 65(d).  Defendant is ordered and enjoined to provide a copy of this Consent Order to each contractor they employ to perform Work itemized herein.  Defendant shall ensure that its contractors perform the Work contemplated herein in accordance with this Consent Order.  No change in corporate ownership or status of Defendant, including, without limitation, any restructuring or transfer of assets or real or personal property, shall in any way alter Defendant's obligations under this Consent Order.

## V.  **CALCULATION OF TIME**

5.      Unless otherwise stated in this Consent Order, where this Order requires actions to be taken within a specified period of time (e.g., "within thirty (30) days"), this time period shall begin the day after the Effective Date unless the time is otherwise stated to start at another point in time.  In computing any period of time under this Consent Order, where the last day would fall on a Saturday, Sunday or State of Ohio or federal holiday, the period shall run until the end of the next day that is not a Saturday, Sunday or legal holiday.

## VI.  **SATISFACTION OF LAWSUIT; NO ADMISSION**

6.      Except as provided in Section XXI, Reservation of Rights, compliance with the terms of this Consent Order shall constitute full satisfaction of any civil liability of Defendant to

8

the State for all claims alleged in the Complaint. Nothing in this Section shall apply to new conditions at or new information about the Site, or to any violations arising out of acts or omissions first occurring after the Effective Date. This Consent Order is not to be interpreted as an admission on the part of any Party of any liability or wrongdoing, and it is expressly understood that no Party admits liability of any sort.

## VII. REMEDIAL ACTION AND OTHER INJUNCTIVE RELIEF

7.      Defendant is ordered and enjoined to comply with all applicable provisions of the Ohio hazardous waste and water pollution laws and rules as set forth in R.C. Chapters 3734 and 6111 and Ohio Adm. Code Chapters 3745-50 through 3745-69 and 3745-270.

8.      Defendant is ordered and enjoined to comply with and implement the requirements set forth in this Consent Order and the appendices hereto.

## VIII. IMPLEMENTATION OF THE REMEDY

9.      All Work to be performed by the Defendant pursuant to this Section shall be under the direction and supervision of a qualified engineer or geologist with expertise in hazardous waste site investigation and remediation. Defendant shall conduct all RD/RA activities at the Site in accordance with the following provisions:

A.      Within thirty (30) days of the date of the Effective Date,

Defendant shall submit to Ohio EPA a RD/RA Work Plan for the design and

implementation of the selected remedy identified in the Decision Document issued by

Ohio EPA for remediation of the Site. The RD/RA Work Plan shall be developed in

conformance with this Consent Order, the RD/RA SOW, applicable state and federal law,

9

and the most current versions of the RD/RA Guidance Documents listed in the appendices to this Consent Order.  If, during RD/RA Work Plan development, Ohio EPA determines that any guidance documents in addition to those specified in the list of RD/RA Guidance Documents attached to this Consent Order, affect the Work to be performed, Ohio EPA shall notify Defendant and any affected work plan shall be modified accordingly.

B.      Within thirty (30) days of Ohio EPA approval of the RD/RA Work Plan, Defendant shall implement the Work detailed therein in accordance with the schedule contained in the approved RD/RA Work Plan.

## IX.  CIVIL PENALTY

10.      Pursuant to R.C. 3734.13(C) and R.C. 6111.09(A), Defendant shall pay to the State a civil penalty of Fifty Thousand dollars ($50,000).  Payments are to be made according to the following payment schedule:

a.  First payment of Six Thousand, Two Hundred Fifty Dollars ($6,250) due within sixty (60) days of the Effective Date.

b.  Seven quarterly payments of Six Thousand, Two Hundred Fifty Dollars ($6,250) due no later than the following dates:  June 15, 2012; September 15, 2012; December 15, 2012; March 15, 2013; June 15, 2013; September 15, 2013; and December 15, 2013.

11.      This civil penalty is for Defendant's violations, as alleged in the Complaint, of the June 23, 1992 Director's Final Findings and Orders prior to the Effective Date.

10

12.     The civil penalty payments shall be made by delivering to the State a certified check in the amount stated in Paragraph 10, payable to the order of "Treasurer, State of Ohio" c/o, Martha Sexton, Paralegal, or her successor at the Office of the Attorney General of Ohio, Environmental Enforcement Section, 30 East Broad Street, 25th Floor, Columbus, Ohio 43215. This penalty shall be deposited into the hazardous waste clean-up fund created by R.C. 3734.28. A copy of the check remitted and the transmittal letter shall be sent to the attention of the Franklin Steel Site Coordinator at the address set forth in Paragraph 73.

## X.  ADDITIONAL WORK

13.     Should Ohio EPA determine that additional Work is necessary to achieve the purposes of this Consent Order, as set forth in Section I. Statement of Purpose, Ohio EPA may notify Defendant in writing of the need for such additional Work. Within sixty (60) days of the receipt of such notification from Ohio EPA, Defendant shall prepare and submit to Ohio EPA for review and approval a work plan for the performance of the additional Work ("Additional Work Work Plan"). Any required work plan that includes sampling as an element, shall include a sampling plan together with a rationale for the sampling activities, locations, quantity and frequency of sampling, constituents for analysis, and quality control/quality assurance procedures.

14.     Defendant shall submit the Additional Work Work Plan for review and approval pursuant to Section XVI, Review of Submittals, and Section XXVII, Mailing and Delivery of Documents. Upon approval of the Additional Work Work Plan by Ohio EPA, Defendant shall implement the Additional Work Work Plan in accordance with the schedules contained therein.

11

15.     In the event that Defendant determines that additional Work is necessary to achieve the purposes of this Consent Order as set forth in Section I., Statement of Purpose, Defendant shall submit a written request for approval to Ohio EPA explaining the need for and detailing the nature of the additional Work prior to performing the additional Work. Upon agreement by Ohio EPA with Defendant's request, Defendant shall develop and implement an Additional Work Work Plan as set forth in this Section of this Consent Order.

16.     In the event that additional Work is necessary for any task described in this Consent Order, the deadline for completing such task(s) shall be extended by the amount of time required to perform the additional Work required, including the period of time required to plan and/or obtain approval from the Ohio EPA for the performance of such Work.

## XI. ENVIRONMENTAL COVENANT

17.     Within thirty (30) days after the Effective Date of this Consent Order, Defendant shall submit to Ohio EPA a draft Environmental Covenant, which is consistent with the template contained in Appendix E and which contains the use restrictions set forth in the Decision Document, for the 10.0 acre property, parcel I.D. 025-007046 and the 7.076 acre property, parcel I.D. 025-006924. After approval by Ohio EPA, Defendant shall execute the Environmental Covenant, and within thirty (30) days of approval, Defendant shall submit the approved and executed Environmental Covenant to Ohio EPA. After the environmental covenant has been executed by the Director, Defendant shall record it in the Franklin County Recorder's Office thirty (30) days after receipt of Ohio EPA's final approval letter. A copy of the Environmental

Covenant, showing it has been properly recorded, shall be provided to the Ohio EPA Site Coordinator.

18.     To fully implement the remedy set forth in the Decision Document, an Environmental Covenant containing the use restrictions set forth in the Decision Document will need to be approved, executed, and recorded for the remaining 18.807 acre property, parcel I.D. 025-011447 currently owned by CQCB, Inc. If this Environmental Covenant is not recorded, then the remedy set forth in the Decision Document will need to be modified by Ohio EPA, and Defendant shall implement the modified remedy.

## XII. DESIGNATION OF SITE COORDINATORS

19.     Within ten (10) days of the Effective Date, Defendant shall designate, in writing or by electronic mail, a Site Coordinator to oversee and implement the Work required by this Consent Order and to coordinate with the Ohio EPA Site Coordinator. Defendant may also designate an alternate Site Coordinator. To the maximum extent practicable, communication between Defendant and Ohio EPA concerning the activities performed under this Consent Order shall be through the Site Coordinators. Each Party's Site Coordinator shall be responsible for ensuring that communications from the other Party are appropriately disseminated and processed. For the duration of this Consent Order, Defendant's designated Site Coordinator or alternate shall be on-site or on-call during all hours of Work to be performed pursuant to this Consent Order. The absence of the Ohio EPA Site Coordinator from the Site shall not be cause for stoppage of Work unless otherwise provided.

20.     Defendant or Ohio EPA may change their Site Coordinator or alternate by notifying the other Party at least five (5) days prior to the change, unless impractical, but in no event later than the actual day the change is made.

21.     Without limiting any authority conferred by law on Ohio EPA, the authority of the Ohio EPA Site Coordinator includes, but is not limited to:

A.     Taking samples and directing the type, quantity and location of samples to be taken by Defendant pursuant to an approved work plan.

B.     Observing, taking photographs, or otherwise recording information related to the implementation of this Consent Order, including the use of any mechanical or photographic device.

C.     Directing that Work stop whenever the Ohio EPA Site Coordinator determines that the activities at the Site may create or exacerbate a threat to public health or safety, or threaten to cause or contribute to air or water pollution or soil contamination.

D.     Conducting investigations and tests related to the implementation of this Consent Order.

E.     Inspecting and copying records, operating logs, contracts and/or other documents related to the implementation of this Consent Order.

F.     Assessing compliance with this Consent Order by Defendant and their agents and/or contractors.

14

## XIII. SAMPLING AND DATA AVAILABILITY

22. Defendant shall notify Ohio EPA not less than seven (7) days in advance of all sample collection activity. Upon request, Defendant shall allow split and/or duplicate samples to be taken by Ohio EPA. Ohio EPA shall also have the right to take any additional samples it deems necessary.

23. As part of the monthly progress reports required in Section XV, Progress Reports and Notice, Defendant shall submit to Ohio EPA copies of the results of all sampling and/or tests or other data, including validated raw data and original laboratory reports, generated by or on behalf of Defendant with respect to the Site and any Work related to this Consent Order.

24. Defendant shall submit to Ohio EPA two (2) copies of all interpretive reports and written explanations concerning the raw data and original laboratory reports. Such interpretive reports and written explanations shall not be submitted in lieu of original laboratory reports and raw data. Should Defendant subsequently discover an error in any report or raw data, Defendant shall promptly notify Ohio EPA of such discovery and provide the correct information, in writing.

## XIV. SITE ACCESS

25. As of the Effective Date, the State and its representatives and contractors shall have access at all times to the Site, which includes the Facility and any other property controlled by or available to Defendant to which access is necessary to effectuate the actions required by this Consent Order. Access shall be allowed for the purposes of conducting activities related to this Consent Order including but not limited to:

15

a.   Monitoring the Work or any other activities taking place at the Site.

b.   Verifying any data or information submitted to Plaintiff.

c.   Conducting investigations relating to contamination at or near the Site

d.   Obtaining samples.

e.   Assessing the need for, planning, or implementing additional response actions at or near the Site.

f.   Inspecting and copying records, operating logs, contracts or other documents maintained or generated by Defendant or its agents, consistent with this Consent Order and applicable law.

g.   Using a camera, video recording, sound recording, or other documentary production equipment.

h.   Assessing compliance with this Consent Order by Defendant and its agents and/or contractors.

26.   To the extent that any property of the Site, to which access is necessary to effectuate the actions required by this Consent Order, is owned or controlled by persons other than Defendant, Defendant shall use their best efforts to secure access from such persons for Defendant and Ohio EPA as necessary to effectuate this Consent Order. Copies of all access agreements obtained by Defendant shall be provided promptly to Ohio EPA. If any access required to effectuate this Consent Order is not obtained within thirty (30) days of the Effective Date, or within thirty (30) days of the date Ohio EPA notifies Defendant in writing that additional access beyond that previously secured is necessary, Defendant shall promptly notify

16

Ohio EPA in writing of the steps Defendant has taken to attempt to obtain access. Ohio EPA may, as it deems appropriate, assist Defendant in obtaining access.

27. Nothing in this Consent Order shall be construed to limit the statutory authority of the Director or his authorized representatives to enter at reasonable times upon any private or public property, real or personal, to inspect or investigate, obtain samples and examine or copy any records to determine compliance with R.C. Chapters 3734 and/or 6111.

## XV. PROGRESS REPORTS AND NOTICE

28. Beginning with the first full month following the Effective Date and throughout the period that this Consent Order is effective, unless otherwise directed by Ohio EPA, Defendant shall submit, by mail, two (2) copies of written progress reports to Ohio EPA by the tenth day of every month. At a minimum, the progress reports shall:

  a. Describe the status of the Work and actions taken toward achieving compliance with the Consent Order during the reporting period.

  b. Describe the difficulties encountered during the reporting period and actions taken to rectify any difficulties.

  c. Describe activities planned for the next month.

  d. Identify changes in key personnel.

  e. List targets and actual completion dates for each element of activity, including project completion.

  f. Provide an explanation for any deviation from any applicable schedule.

17

g.      Indicate what analytical data was received during the period and provide copies of all data required under Section XIII, Sampling and Data Availability.

h.      Indicate the quantity of the contaminated soil and waste that was treated and/or removed and the contaminated ground water and surface water that was treated, and indicate where such contaminated media were disposed.

## XVI. REVIEW OF SUBMITTALS

29.     This section applies to all documents Defendant is required to submit to Ohio EPA for review and approval in accordance with the requirements of this Consent Order.

30.     All RD/RA documents submitted to Ohio EPA shall be developed in accordance with the attached RD/RA Guidance Documents and RD/RA SOW (Appendices C and D). Every document that Defendant is required to submit to Ohio EPA under this Consent Order is subject to the review and approval of Ohio EPA in accordance with this Consent Order and applicable state and federal laws. Upon review, Ohio EPA may at its sole discretion (a) approve the submission in whole or in part; (b) approve the submission upon specified conditions or modifications; (c) modify the submission; (d) disapprove the submission in whole or in part; (e) notify Defendant of deficiencies; or (f) any combination of the above.

31.     If Ohio EPA disapproves a submittal, in whole or in part, Ohio EPA will notify Defendant of the deficiencies in writing. Defendant shall, within forty-five (45) days of receipt of Ohio EPA's written notice, or if supplemental field, laboratory, or other investigatory work must be performed, within forty-five (45) days of completion of such work, or such longer period

18

of time as specified in writing by Ohio EPA, correct the deficiencies and submit a revised submission to Ohio EPA for approval. Notwithstanding the notice of deficiency, Defendant shall proceed to take any action(s) required by the approved portion(s) of the submission.

32.     If Ohio EPA does not approve a revised submission, in whole or in part, Ohio EPA may again require Defendant to correct the deficiencies and incorporate all changes, additions, and/or deletions within fourteen (14) days, or such time period as specified by Ohio EPA in writing. In the alternative, Ohio EPA may approve upon condition, modify or disapprove the revised submission.

33.     In the event of approval or approval upon conditions or modifications, Defendant shall proceed to take any action required by the submission as approved by Ohio EPA.

34.     All work plans, reports, or other items required to be submitted to Ohio EPA under this Consent Order shall, upon approval by Ohio EPA, be deemed to be incorporated in and made an enforceable part of this Consent Order. In the event that Ohio EPA approves a portion of a work plan, report, or other item, the approved portion, together with any modifications or conditions thereto, shall be deemed to be incorporated in and made an enforceable part of this Consent Order.

35.     If Ohio EPA determines that any additional or revised guidance documents affect the Work to be performed in implementing the RD/RA, Ohio EPA will notify Defendant, and Defendant shall modify the work plan(s) and/or other affected documents according to Ohio EPA's comments.

## XVII. **DISPUTE RESOLUTION**

36.     This Section shall only be applicable to the following portions of this Consent Order: Section VIII, Implementation of the Remedy; Section X, Additional Work; Section XVI, Review of Submittals; and Section XXIII, Payments and Reimbursement of Costs, pursuant to the limitations identified in Paragraph 69.

37.     The Site Coordinators and/or the alternate Site Coordinators shall, whenever possible operate by consensus. In the event that a disagreement exists about either the adequacy or disapproval of any work plan, report, or other item required to be submitted by Defendant pursuant to this Consent Order or, the need for additional Work or, the accuracy of the State's request for reimbursement of costs, then the Site Coordinators shall have fifteen (15) days from the date the dispute arises to negotiate in good faith in an attempt to resolve the differences. The dispute arises when either the Ohio EPA Site Coordinator provides a brief written notice of dispute to the Defendant's Site Coordinator, or the Defendant's Site Coordinator provides a brief written notice of dispute to the Ohio EPA Site Coordinator. This fifteen (15) day period may be extended by mutual agreement of the parties, up to an additional seven (7) days.

38.     In the event that the Site Coordinators and/or the alternate Site Coordinators are unable to reach consensus on the dispute, then each Site Coordinator and/or the alternate Site Coordinator shall reduce his or her position to writing within thirty (30) days of the end of the good faith negotiations referenced in Paragraph 37. Those written positions shall be immediately exchanged by the Site Coordinators. Following the exchange of written

20

positions, the Parties shall have an additional seven (7) days to resolve their dispute. If Ohio EPA concurs with the position of the Defendant, then the work plan, report or other item required to be submitted pursuant to this Consent Order or, any statement for purposes of reimbursement of costs, shall be modified as provided for by Ohio EPA. If necessary, either Party may petition this Court for modification of the Consent Order to include any required extensions of time or variances of required Work.

39.     If Ohio EPA does not concur with the position of the Defendant, the Ohio EPA Site Coordinator will notify Defendant in writing. Upon receipt of such written notice, the Parties shall have seven (7) days to forward a request for resolution of the dispute, along with a written statement of the dispute, to a DERR Manager. The statement of dispute shall be limited to a concise presentation of the Parties' position on the dispute. The DERR Manager, or his/her designee, will resolve the dispute based upon and consistent with this Consent Order; state law, including R.C. Chapters 3734 and 6111, and the rules promulgated thereunder; and other appropriate state and federal laws.

40.     If Defendant and Ohio EPA do not agree on a resolution of the dispute within fourteen (14) days of the decision reached by the DERR Manager, either Party may institute an action in this Court to resolve the dispute under this Consent Order. In this Court proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the decision by Ohio EPA is unlawful and/or unreasonable.

41.     The pendency of dispute resolution set forth in this Section shall not affect the time period for completion of the Work to be performed under this Consent Order, except

21

that upon written mutual agreement of the Parties, any time may be extended as appropriate under the circumstances. Elements of Work not affected by the dispute will be completed in accordance with the schedules contained in the RD/RA Work Plan and other deliverables.

42.     Within thirty (30) days of resolution of a dispute regarding disapproval or inadequacy of a submittal or the need for additional Work, Defendant shall incorporate the resolution and final determination into the work plan, report, or other item required to be submitted under this Consent Order and proceed to implement this Consent Order according to the amended work plan, report, or other item required to be submitted under this Consent Order.

43.     Within thirty (30) days of resolution of a dispute regarding any inaccurate statement issued for reimbursement of costs, Ohio EPA will make any necessary corrections to the statement and reimburse to Defendant any overpayment of costs made by Defendant that may have arose as a result of the inaccurate statement being issued to Defendant.

44.     Unless otherwise expressly provided for in this Consent Order, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to those matters set forth in Paragraph 36 of this Consent Order.

## XVIII.  CORPORATE TRUST AGREEMENT FOR FUNDS TO IMPLEMENT THE REMEDY AND FINANCIAL ASSURANCE FOR OPERATION AND MAINTENANCE

45.     Within thirty (30) days of the Effective Date, Defendant shall create and fund a corporate trust account in the amount of Four Hundred Eighty Thousand dollars ($480,000.00).

22

The corporate trust account shall be substantively the same as the corporate trust account

agreement template attached to this Consent Order as Appendix F and shall require that all funds

in the corporate trust account by used for the Work requirements and payment obligations set

forth in this Consent Order.  The corporate trust account agreement shall also provide Plaintiff

the right to petition the court for removal of the trustee if the trustee is not complying with the

duties and responsibilities set forth in the corporate trust account agreement.

   46.  Within ninety (90) days of the Effective Date, Defendant shall submit to Ohio

EPA a statement of the dollar amount of funds in the corporate trust account and an updated

statement of such dollar amounts every ninety (90) days thereafter.

   47.  Sixty (60) days after Ohio EPA has approved the construction completion

report for the remedy and has approved Defendant's long-term operation and maintenance

and monitoring plan, Defendant shall provide Ohio EPA with documentation demonstrating

that any funds remaining in the corporate trust account assure implementation of the long-

term operation and maintenance and monitoring of the remedy set forth in the Decision

Documentation.  If any remaining funds in the corporate trust account are less than the

estimated costs associated with long-term operation and maintenance and monitoring of the

remedy, Defendant shall fund the corporate trust account so that it equals the estimate costs

associated with implementation of long-term operation and maintenance and monitoring.

   48.  Every six months during the period in which Defendant is or should be

implementing operation and maintenance of the remedy, Defendant shall provide a new estimate

23

of the total costs associated with implementation of long-term operation and maintenance and monitoring of the remedy.

49.     If the amount in the corporate trust account is greater than the new estimate of the total costs associated with implementation of long-term operation and maintenance and monitoring of the remedy, Defendant may submit a written request to Ohio EPA for a release of the amount in excess of the new estimate of the total cost of the long-term operation and maintenance and monitoring.

50.     If the amount in the corporate trust account is less than the new estimate of the total costs associated with implementation of long-term operation and maintenance and monitoring of the remedy, Defendant shall within thirty (30) days of providing to Ohio EPA the new cost estimate provide documentation to Ohio EPA that Defendant has increased the amount in the corporate trust account until it equals the new estimate of the total costs associated with implementation of the long-term operation and maintenance and monitoring of the remedy.

51.     In the event that Ohio EPA determines at any time that the cost estimate provided for implementation of the long-term operation and maintenance and monitoring of the remedy is inadequate, or in the event that Defendant becomes aware that the cost estimate for implementation of the long-term operation and maintenance and monitoring of the remedy no longer satisfies the requirements set forth herein, Defendant shall within thirty (30) days of receipt of notice of Ohio EPA's determination, or within thirty (30) days of becoming aware of the inadequacy of the cost estimate for  implementation of the long-term operation and maintenance and monitoring of the remedy, obtain and present to Ohio EPA for approval a

revised cost estimate. Defendant's failure or inability to meet its financial obligations for the long-term operation and maintenance and monitoring of the remedy shall not excuse performance of any activities required under this Consent Order.

52. If Defendant desires to change the cost estimate for implementation of the long-term operation and maintenance and monitoring of the remedy, Defendant may petition Ohio EPA in writing to request a change in the cost estimate. The decision to accept such petition shall rest in Ohio EPA's sole discretion.

## XIX. ACCESS TO INFORMATION

53. Defendant shall provide to Ohio EPA, upon request, copies of all non-privileged documents and information within its possession or control or within possession or control of its contractors or agents relating to events or conditions at the Site including, but not limited to manifests, reports, correspondence, or other documents or information related to the Work.

54. Defendant may assert a claim that documents or other information submitted to Ohio EPA pursuant to this Consent Order are confidential under the provisions of Ohio Adm. Code 3745-50-30(A) or R.C. 6111.05(A). If no such claim of confidentiality accompanies the documents or other information when it is submitted to Ohio EPA, it may be made available to the public without notice to Defendant.

55. Defendant may assert that certain documents or other information are privileged under the attorney-client or any other privilege recognized by applicable law before it submits the documents or other information to Ohio EPA. If Defendant withholds certain documents or information and asserts that the certain documents or information are privileged or confidential

25

under applicable law it shall provide Ohio EPA with the confidentiality being asserted and the basis for the assertion.

56.     No claim of confidentiality or privilege, including but not limited to, claims made pursuant to R.C. 3745.70 through 3745.73, shall be made with regard to any data gathered pursuant to this Consent Order, including but not limited to, all sampling, analytical, monitoring, or laboratory reports.

57.     Defendant shall preserve for the duration of this Consent Order and for a minimum of ten (10) years after its termination, all documents and other information within its possession or control, or within the possession or control of its contractors or agents, which in any way relate to the Work notwithstanding any document retention policy to the contrary. Defendant may preserve such documents by microfiche, compact disc, or other electronic or photographic device. Defendant shall notify Ohio EPA at least sixty (60) days prior to the destruction of these documents or other information; and upon request, shall deliver such documents and other information to Ohio EPA.

## XX. INDEMNITY

58.     Defendant agrees to indemnify, save, and hold harmless the State from any and all claims or causes of action arising from, or related to, events or conditions at the Site, except where the claims or causes of action result from negligent, reckless or intentionally tortious conduct by the State occurring outside of the State's exercise of its discretionary functions. Discretionary functions of the State include, but are not limited to, the State's review, approval, or disapproval of Work performed pursuant to the Consent Order. The State agrees to provide

26

notice to Defendant within thirty (30) days of receipt of any claim that may be the subject of indemnity as provided in this Section, and to cooperate with Defendant in the defense of any such claim or action against the State. The State shall not be considered a party to and shall not be held liable under any contract entered into by Defendant in carrying out the activities pursuant to this Consent Order.

## XXI. RESERVATION OF RIGHTS

59.     This Consent Order shall not be construed to limit the authority of the State to seek relief for claims or conditions not alleged in the Complaint or for claims or conditions alleged in the Complaint that occur after the Effective Date.

60.     Nothing in this Consent Order shall be construed to limit the authority of the State to undertake any action against any entity, including Defendant, to eliminate or mitigate conditions that may present an imminent threat to the public health, welfare or environment and to seek cost reimbursement for any such action. Nothing in this Consent Order or its implementation shall be construed to limit the authority of the State to seek relief for claims for damage to natural resources.

61.     Nothing in this Consent Order shall relieve Defendant of any obligation to comply with R.C. Chapters 3734 and 6111 including, without limitation, any regulation, license or order issued under these Chapters, and any other applicable federal, state or local statutes, regulations, or ordinances, including but not limited to permit requirements.

27

62.     The State reserves the right to seek legal and/or equitable relief to enforce the requirements of this Consent Order, including penalties against Defendant for noncompliance with this Consent Order.

63.     The State reserves the right to terminate this Consent Order and/or perform all or any portion of the Work or take any other measures it deems necessary to protect public health and the environment, including recovery of all response costs, in the event that the requirements of this Consent Order are not wholly complied with within the time frames required by this Consent Order.

64.     By entering into this Consent Order, Defendant does not waive any defenses that they may legally raise in any future action identified in this Section, nor does Defendant waive any claim or defenses amongst themselves or against any others not a party to this action. However, Defendant shall not assert, and may not maintain any defense or claim based upon statute of limitations or the principles of waiver, laches, res judicata, collateral estoppel, claim preclusion, issue preclusion, claim splitting or other defense basis upon the contention that the claims brought by the State in a subsequent action were or should have been brought in the instant action.

## XXII.  **OTHER CLAIMS**

65.     Nothing in this Consent Order shall constitute or be construed as a release from any claim, cause of action, or demand in law or equity against any person, firm, partnership, or corporation, not subject to this Consent Order for any liability arising from, or related to, events or conditions at the Site, and Defendant has not purported to or held itself out as representing

28

another person, firm, partnership, or corporation. Defendant expressly denies that they are the agent for or that they represent, or otherwise have the authority to represent, or serve the interests of another person, firm, partnership, or corporation.

### XXIII. PAYMENTS AND REIMBURSEMENT OF COSTS

66. Defendant shall pay to Ohio EPA, One Hundred Ninety-One Thousand, Ninety-Six dollars and Seventy-One cents ($191,096.71) in reimbursement of past Response Costs. This amount includes Response Costs incurred by Ohio EPA after December 31, 2008 and through December 31, 2010 and Response Costs consisting of Ohio EPA legal and enforcement costs incurred in calendar year 2008 in the amount of Nine Thousand, Three Hundred, Twenty-Two dollars and Sixty-Nine cents. ($9,322.69). The past Response Costs in the amount of $191,096.71 shall be paid according to the following payment schedule:

      a.    First payment of Fifteen Thousand, Nine Hundred Twenty-One dollars and Seventy-One cents ($15,921.71) due within sixty (60) days of the Effective Date.

      b.    Eleven quarterly payments of Fifteen Thousand, Nine Hundred Twenty-Five dollars ($15,925) due no later than the following dates: June 15, 2012; September 15, 2012; December 15, 2012; March 15, 2013; June 15, 2013; September 15, 2013; December 15, 2013; March 15, 2014; June 15, 2014; September 15, 2014; and December 15, 2014.

Defendant shall pay the first payment and eleven quarterly payments monthly installments by checks payable to "Treasurer, State of Ohio/Hazardous Waste Special Cleanup Account," and

29

shall remit the checks and transmittal letters to the following addresses

a. Original Correspondence and Checks:

Martha Sexton, Paralegal, or her successor, at the
Office of the Attorney General of Ohio,
Environmental Enforcement Section
30 East Broad Street, 25th Floor
Columbus, Ohio 43215

b. Copies of Correspondence and Checks:

Terri McCloskey, DERR Fiscal Officer,
Ohio EPA, Lazarus Government Center,
P.O. Box 1049, Columbus, Ohio 43216-1049.

c. Copies of Correspondence and Checks are also to be sent to the Ohio EPA Site
Coordinator and the Assistant Attorney General assigned to this case.

67.     Defendant shall reimburse Ohio EPA for all future Response Costs incurred by

Ohio EPA beginning January 1, 2011, and continuing through the termination of this Consent

Order. Ohio EPA will, subject to the provision stated below, submit an itemized statement of

Ohio EPA's Response Costs to Defendant on a quarterly basis on or about April, July, October,

and January. The first quarterly invoice will include Response Costs incurred in 2011 prior to the

Effective Date. If Ohio EPA fails to submit a quarterly invoice, Response Costs from any

previous quarter will be added to the next quarterly invoice. Defendant shall pay Ohio EPA's

Response Costs within sixty (60) days of receipt of each itemized statement at the address set

forth on the Ohio EPA invoice.

68.     Pursuant to R.C. 131.02(D), interest shall accrue on all future Response Costs

from the date that they become past due, at the rate per annum required by R.C. 5703.47,

30

until payment is remitted. Defendant shall remit payment for any such interest due to Ohio EPA by a certified check made payable to "Treasurer, State of Ohio," within thirty (30) days of receipt of an itemized statement at the address set forth in Paragraph 66.

69. Section XVII, Dispute Resolution, of this Consent Order shall apply only to disputes over the accuracy of the State's request for reimbursement of future Response Costs, whether the future Response Costs are related to Work beyond the objectives of this Consent Order as set forth in Section I, Statement of Purpose, and/or whether the future Response Costs are "not inconsistent" with the National Contingency Plan set forth in 40 CFR Part 300. In the event of a dispute over future Response Costs, Defendant shall not be required to pay the contested amount of the future Response Costs until the dispute is resolved. However, if the Dispute is resolved in favor of the State, then Defendant shall pay the full amount as resolved plus any interest which may have accrued as stated in Paragraph 68.

## XXIV. OHIO ATTORNEY GENERAL RESPONSE COSTS

70. Defendant shall pay the Ohio Attorney General Response Costs expended after December 31, 2007 through the Effective Date in the amount Two Thousand, Five Hundred dollars ($2,500) by delivering a certified check in such amount for payment into the State Treasury to the credit of the Attorney General's General Reimbursement Account made payable to the order of "Treasurer, State of Ohio" to Martha Sexton, or her successor, at the Office of the Attorney General of Ohio, Environmental Enforcement Section, 30 East Broad Street, 25th Floor, Columbus, Ohio 43215, within thirty (30) days of the Effective Date. Any check submitted in compliance with this Section shall be in addition to and separate from any check

31

submitted pursuant to any other Section of this Consent Order.

## XXV. TERMINATION

71.    This Consent Order shall terminate upon joint motion of the Parties, and approval

of the Court, following completion of all activities, including operation and maintenance of the

Remedial Action and payment of all Response Costs, Stipulated Penalties, and the Civil Penalty

required under this Consent Order. If the Parties cannot agree on a joint motion, Defendant may

move the Court, pursuant to Rule 60(B) of the Ohio Rules of Civil Procedure, to terminate this

Consent Order. Plaintiff takes no position with regard to such motion at this time, and reserves

its rights to oppose the motion. This Section, and the Sections of this Consent Order on

Reservation of Rights, Satisfaction of Lawsuit; No Admission, and Access to Information, shall

survive this Termination Provision.

## XXVI. MODIFICATION

72.    No modification shall be made to this Consent Order without the written

agreement of the Parties and the Court.

## XXVII. MAILING AND DELIVERY OF DOCUMENTS

73.    All documents requiring submittal pursuant to this Consent Order or any plan

developed in accordance with this Consent Order shall be sent by certified mail return receipt

requested, or equivalent, to:

> Ohio EPA Central District Office
> Division of Environmental Response and Revitalization
> Attn. Franklin Steel Site Coordinator
> P.O. Box 1049
> Columbus, OH 43216-1049

32

All correspondence with the Defendant shall be sent to the following:

> Stephen N. Haughey
> FROST BROWN TODD LLC
> 2200 PNC Center
> 201 E. Fifth Street
> Cincinnati, Ohio 45202-4182

## XXVIII.  COMPLIANCE WITH APPLICABLE LAWS, PERMITS AND APPROVALS

74.    All activities undertaken by Defendant pursuant to this Consent Order shall be undertaken in accordance with the requirements of all applicable federal, state and local laws, rules, regulations and permits or other legal requirements, including the Consent Order. Defendant shall submit timely applications and requests for any such permits and approvals. Where such laws appear to conflict with the other requirements of this Consent Order, Defendant is ordered and enjoined to immediately notify Ohio EPA of the potential conflict.  Defendant is ordered and enjoined to include in all contracts or subcontracts entered into for Work required under this Consent Order, provisions stating that such contractors or subcontractors, including their agents and employees, shall perform all activities required by such contracts or subcontracts in compliance with this Consent Order and all applicable laws and rules.  This Consent Order is not a permit issued pursuant to any federal, state or local law or rule.

75.    Should Defendant identify any inconsistency between or among this Consent Order, any applicable federal, state or local laws, rules, regulations or permits or other legal requirements, or any of the guidance documents, work plans, reports, or other items required to be submitted to Ohio EPA under this Consent Order, Defendant shall promptly notify Ohio EPA

in writing of each inconsistency not later than thirty (30) days after identifying the inconsistency and the effect of the inconsistencies upon the Work to be performed. Defendant shall also recommend, along with a supportable rationale justifying each recommendation, the requirement Defendant believes should be followed. Defendant shall implement the affected Work as directed by Ohio EPA.

## XXIX. APPENDICES AND DOCUMENTS APPROVED PURSUANT TO THIS CONSENT ORDER

76. The Parties agree that the appendices attached to this Consent Order and all documents approved by Ohio EPA pursuant to the requirements of this Consent Order are incorporated by reference into and are an enforceable part of this Consent Order.

## XXX. COURT COSTS

77. Defendant shall pay the court costs of this action.

## XXXI. STIPULATED PENALTIES

78. In the event that any Ohio EPA-approved deadline contained in the schedule of any approved submittal required by this Consent Order is not met, Defendant is ordered and enjoined to pay stipulated penalties that shall accrue in the amount of One Hundred Dollars ($100) per day, per violation for the first fifteen (15) days of non-compliance; Two Hundred and Fifty Dollars ($250) per day, per violation for the 16th day through the 30th day of noncompliance; and Five Hundred ($500) per day, per violation for violations lasting beyond thirty (30) days.

79.     Stipulated penalties shall not begin to accrue for days 1 and 2, as indicated in the above schedules, if the milestone requirement or report submission deadline is met on or before day 3. If a milestone requirement or report submission deadline is not met on or before day 3, the Defendant shall be liable for stipulated penalties for days 1, 2, and 3, in addition to the days thereafter, until the milestone requirement or report submission deadline is met.

80.     Any payment of stipulated penalties accrued under the provisions of Paragraphs 78 and 79 shall be made by delivering to the Environmental Enforcement Section of the Ohio Attorney General, State Office Tower, 30 East Broad Street - 25th Floor, Columbus, Ohio 43215, Attn: Martha Sexton, or her successor, a certified check(s) for the appropriate amounts(s), within fourteen (14) days from the date the default is cured, made payable to "Treasurer, State of Ohio."

## XXXII.  POTENTIAL *FORCE MAJEURE*

81.     If any event occurs which causes or may cause a delay of any requirements of this Order, Defendant shall notify the Ohio EPA Site Coordinator in writing within ten (10) calendar days of the event, describing in detail the anticipated length of the delay, the precise cause or causes of the delay, the measures taken and to be taken to prevent or minimize the delay and the timetable by which measures will be implemented. Defendant will adopt all reasonable measures to avoid or minimize any such delay.

82.     Notification by Defendant in accordance with Paragraph 81, above, does not necessarily terminate or delay any requirement in the Consent Order. In any action by the State to enforce any of the provisions of this Order, Defendants may raise a *force majeure* defense and that their conduct was caused by reasons entirely beyond their control such as, by way of

35

example and not limitations, acts of God, strikes, acts of war, civil disturbances, or vandalism. While the State does not agree that such a defense exists, it is, however, hereby agreed upon by Defendant and the State that it is premature at this time to raise and adjudicate the existence of such a defense and that the appropriate point at which to adjudicate the existence of such a defense is at the time that a proceeding to enforce this Consent Order, if any, is commenced by the State. At that time, Defendant will bear the burden of providing that any delay was or will be caused by circumstances entirely beyond the control of Defendant. Any extension of a date based on a particular incident does not mean that Defendant shall receive an extension of a subsequent date or dates. Defendant must make an individual showing of proof for each incremental step or other requirement for which an extension is sought.

## XXXIII. RETENTION OF JURISDICTION

83.    This Court shall retain jurisdiction of this action for the purpose of enforcing this Consent Order.

## XXXIV. ENTRY OF CONSENT ORDER AND JUDGMENT BY CLERK

84.    Upon signing of this Consent Order by the Court, the clerk is directed to enter it.

## XXXV. AUTHORITY TO ENTER INTO THE CONSENT ORDER

85.    Each signatory for a corporation represents and warrants that he/she has been duly authorized to sign this document and so bind the corporation to all terms and conditions thereof, and that he/she submits with this Consent Order an authenticated and certified

36

resolution from the corporation establishing that he/she is so empowered.

## XXXVI. EFFECTIVE DATE

86.     This Consent Order shall be effective upon the date of its entry by the Court.

IT IS SO ORDERED.

MAGISTRATE JUDGE NORAH MCCANN KING


s/Norah McCann King
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO


**MICHAEL DeWINE**
**OHIO ATTORNEY GENERAL**

*Timothy Kern*

**Timothy J. Kern (0034629)**
**John F. Cayton (0072736)**
Assistant Attorneys General
Environmental Enforcement Section
Columbus, Ohio 43215
Tel.: (614) 466-5261
Fax.: (614) 644-1926
e-mail:
timothy.kern@ohioattorneygeneral.gov

*Attorneys for Plaintiff State of Ohio*

*Stephen N. Haughey*

Stephen N. Haughey (0010459)
**FROST BROWN TODD LLC**
2200 PNC Center, 201 E. Fifth Street
Cincinnati, Ohio 45202-4182
Telephone: (513) 651-6127
Facsimile: (513) 651-6981
shaughey@fbtlaw.com

*Attorney for Defendant Franklin Steel*
*Company, aka Franklin Steel*
*Company, Inc.*

37

The undersigned party hereby consents to the foregoing Consent Order in *State v. Franklin Steel Company, et al.*

FRANKLIN STEEL COMPANY
aka FRANKLIN STEEL COMPANY, INC.

signature: _____

print/type name: EDWARD PAUL

title: PRESIDENT

38